UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CIV-60931-RAR

**ROGER BEAULIERE**,

    Plaintiff,

v.

**JETBLUE AIRWAYS CORPORATION**, *et al.,*

    Defendants.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND

**THIS CAUSE** comes before the Court on Plaintiff's Motion for Remand [ECF No. 3] ("Motion") and Defendant JetBlue Airways Corporation's Response in Opposition [ECF No. 7] ("Remand Response"). The Court having carefully reviewed the Motion, the Remand Response, and the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Remand [ECF No. 3] is **GRANTED**. For the reasons set forth below, this case is **REMANDED** to the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

## BACKGROUND

On March 11, 2020, Plaintiff filed a Complaint in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County against Defendants JetBlue Airways Corporation ("JetBlue") and Direct Airlines Services, Inc. *See* Complaint [ECF No. 1-2]. Plaintiff later dismissed Defendant Direct Airline Services, Inc. and amended his complaint to add Defendant ABM Industries Inc. ("ABM," and together with JetBlue, "Defendants"). *See* Amended Complaint [ECF No. 1-5]. The Amended Complaint alleges two counts of negligence—one

against each Defendant—stemming from an incident in which Plaintiff asserts he was injured after falling out of a wheelchair shortly after exiting a JetBlue flight. *See generally id*. Plaintiff claims that JetBlue was negligent because one of its employees and/or independent contractors failed to properly secure him in his wheelchair. *Id*. at 2-4. Similarly, Plaintiff alleges that ABM, as the owner and/or operator of said wheelchair, and as the entity that had possession and control of said wheelchair, failed in its duty to operate the device in a way that did not cause or contribute to his injuries. *Id*. at 4. Notably, the Amended Complaint does not plead a specific amount in damages.

On May 8, 2020, Defendant JetBlue filed its Notice of Removal [ECF No. 1] ("Removal Notice"), alleging diversity jurisdiction under 28 U.S.C. section 1332(a), and Defendant ABM subsequently joined in JetBlue's Notice of Removal, *see* [ECF No. 6]. In the Removal Notice, Defendants contend that the amount in controversy exceeds $75,000 based on Plaintiff's medical bills and his pre-suit settlement demand letter, which "was many times in excess of $75,000." Removal Notice at 3. Shortly thereafter, Plaintiff filed his First Motion to Remand [ECF No. 4], arguing that the pre-suit demand, standing alone, is insufficient to establish the amount in controversy; therefore, Defendants have failed to meet the requirements of federal jurisdiction. In its response, Defendant JetBlue counters that the pre-suit demand and its attachments do establish the amount in controversy because: 1) they show a demand by plaintiff for an amount in excess of $75,000; and 2) the records attached to the settlement demand show that Plaintiff incurred medical expenses totaling $32,607.27, which JetBlue notes is exclusive of future medical costs. *See generally* Remand Resp.

In neither its Removal Notice nor its Remand Response did JetBlue provide the Court with the pre-suit settlement demand, citing privilege concerns. *See* Remand Resp. at 5. Because the demand is the sole basis on which JetBlue relies to establish the amount in controversy, the Court

required JetBlue to file, under seal, the demand and its attachments—"along with any supplemental documentation relied on to calculate the amount-in-controversy"—so that the Court could review it for purposes of making its jurisdictional determination. Paperless Order [ECF No. 18]. Accordingly, in its analysis, the Court will describe the contents of the pre-suit settlement demand only insofar as the parties have done so in their public filings.

## **LEGAL STANDARD**

A defendant is permitted to remove a case from state court to federal court if the case could have been brought in federal court in the first instance. 28 U.S.C. § 1441. This includes actions where the federal court has diversity jurisdiction under 28 U.S.C. § 1332, which requires complete diversity of citizenship between the plaintiff and all defendants and an amount in controversy exceeding $75,000. On a motion to remand, the removing party shoulders the burden of establishing federal subject matter jurisdiction. *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447. Critical to the analysis here, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). "Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *Id.*

In determining whether subject matter jurisdiction exists, the Court focuses on the amount in controversy at the time of removal, not at any later point. *Stern v. First Liberty Ins. Co.*, 424 F. Supp. 3d 1264, 1269 (S.D. Fla. 2020) (citations omitted). "To determine whether this standard is met, a court first examines whether it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." *Id.* (citing *Miedema v. Maytag Corp.*, 450

F.3d 1322, 1330 (11th Cir. 2006), abrogated on other grounds by *Dudley v. Eli Lilly & Co.*, 778 F.3d 909 (11th Cir. 2014)) (quotations omitted). "If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *Id*.

"Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdiction requirement." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010); *see also* 28 U.S.C. § 1332(a). Although the removing party carries the burden in establishing that removal was proper, "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka*, 608 F.3d at 754 (citations omitted). However, "[a] conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden." *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1320 (11th Cir. 2001) (citations omitted).

As explained above, JetBlue relies on the pre-suit demand and Plaintiff's medical records attached thereto to establish the amount in controversy. Both are proper evidence for the Court to consider in determining whether the amount in controversy is satisfied. *See Shields v. Fresh Market, Inc.*, No. 19-cv-60725, 2019 WL 1648974, at *2 (S.D. Fla. Apr. 17, 2019) ("Courts have previously held that pre-suit demand letters can qualify as 'other papers' under 28 U.S.C. § 1446(b)(3).") (collecting cases); *Sibilia v. Makita Corp.*, 674 F. Supp. 2d 1290, 1293 n.4 (M.D. Fla. 2009) ("[R]emoval would be appropriate if Defendant had used an 'other paper' under 28 U.S.C. § 1446(b) to establish the jurisdictional amount, such as . . . medical bills or invoices establishing the amount of Plaintiff's damages.").

"While [a] settlement offer, by itself, may not be determinative, it counts for something." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994). Accordingly, "[s]ettlement offers do not automatically establish the amount in controversy for purposes of diversity jurisdiction. Instead, courts have analyzed whether demand letters merely reflect puffing and posturing, or whether they provide specific information to support the plaintiff's claim for damages and thus offer a reasonable assessment of the value of the claim." *Gluth v. Am. Airlines, Inc.*, No. 2:19-cv-918-FtM-38MRM, 2020 WL 897986, at *2 (M.D. Fla. Feb. 25, 2020) (internal quotations and citations omitted); *see also Moses v. Home Depot U.S.A., Inc.*, No. 13-60546-CIV, 2013 WL 11977917, at *3 (S.D. Fla. June 19, 2013) ("While a pre-suit demand letter alone may not be determinative of the amount in controversy when it reflects 'puffing' and 'posturing,' a demand letter that provides specific information to support the plaintiff's claim for damages is entitled to more weight.") (internal alterations and quotations omitted).

## **ANALYSIS**

There are many reasons why the dollar amount a plaintiff offers to settle a claim before commencing litigation would be considerably higher than the ultimate amount in controversy. For example, a plaintiff could simply be wishing to "start high" to induce a higher counteroffer from the defendant, or a plaintiff could be factoring in a defendant's wish to avoid the tangential costs of litigation, such as attorney's fees or potential damage to a defendant's public reputation. Given the range of possible considerations that go into a settlement offer, the number a plaintiff offers to settle a claim cannot, standing alone, create federal jurisdiction. Accordingly, where, as here, a defendant relies on a pre-suit demand letter to establish the amount in controversy, the key question is whether the settlement demand contains specific evidence substantiating the plaintiff's offer. *Shields*, 2019 WL 1648974, at *2 (explaining that while a "demand letter, standing alone, may not

be enough to satisfy the jurisdictional amount," when "combined with" supporting documentation, it can establish the amount in controversy). In this case, the answer to that question is no.

Here, the pre-suit demand is in excess of the jurisdictional amount but sets forth damages for past medical expenses in the amount of only $32,607.27. *See* Removal Notice at 3; Remand Resp. at 3-5. Critically, the demand makes no explicit mention—nor so much as an estimation—as to the value of future medical expenses. As a result, the demand letter here differs substantially from cases where courts have found the pre-suit demand letter sufficient to establish the amount in controversy.

In such cases, the pre-suit demand letter detailed, or at least estimated with some level of specificity and evidentiary support, the plaintiff's past and future medical expenses exceeding the jurisdictional amount. For example, in *Wilson v. Target Corp.*, we found that a pre-suit demand letter "delineate[d] the extent of [Plaintiff's] injuries, the physicians who ha[d] treated her, and the medical care she received from each of those physicians. [Plaintiff] claim[ed] [in the letter] to have incurred in excess of $100,000.00 in medical expenses and estimate[d] her future medical expenses [would] be over $1 million." No. 10–80451–CIV, 2010 WL 3632794, at *4 (S.D. Fla. Sept. 14, 2010). Thus, we concluded that "*[b]ecause of this detail*, the pre-suit demand [could] be considered reliable evidence that [Plaintiff]'s damages [would] exceed $75,000." *Id*. (emphasis added); *see also Gluth*, 2020 WL 897986, at *2 (finding pre-suit demand letter adequately demonstrated the amount-in-controversy where "[p]laintiff present[ed] a list of his future medical expenses based on recommendations from his physician. These expenses are itemized, and Plaintiff present[ed] a cost for each item of treatment rather than a lump sum. Plaintiff also explain[ed] the detailed methodology he used to calculate his past and future economic losses."); *Livolsi v. State Farm Mut. Auto. Ins. Co.*, No. 17-CV-80407, 2017 WL 7792572, at *2 (S.D. Fla.

June 30, 2017) (remand avoided based, in part, on demand letter that "unlike the plaintiff's demand letter in [another case], [was] specific and detail[ed] past and future medical expenses" exceeding the jurisdictional threshold); *La Rocca v. Stahlberger*, 676 F. Supp. 2d 1347, 1349-50 (S.D. Fla. 2009) (finding pre-suit demand package sufficiently demonstrated the amount in controversy where "[t]o satisfy its burden, [d]efendant point[ed] to medical reports wherein the lowest estimate of [p]laintiff's future medical bills would be $2,000 per year," which, based on plaintiff's age, was likely to exceed the jurisdictional amount when combined with the medical expenses already incurred by plaintiff). While the pre-suit demand letter here contains medical records related to Plaintiff, some of which hint at the *possibility* of future medical expenses, the letter makes no effort whatsoever to estimate those expenses—much less estimate them with the requisite evidentiary support our caselaw requires.

Nor is this a case in which the plaintiff's well-supported quantified damages come close to $75,000, and the defendant seeks to make up the difference with plausible estimates or other logical inferences by the Court. In *Katz v. J.C. Penney Corp.*, for example, plaintiffs had sought $58,995.78 for past medical expenses in their pre-suit demand package, leaving a balance of $16,004.02 to meet the $75,000 jurisdictional amount. No. 09-CV-60067, 2009 WL 1532129, at *6 (S.D. Fla. June 1, 2009). We found that "[t]aking into account that the balance represent[ed] less than one half of the [p]laintiff's own estimate of $39,800 in future medical costs and [p]laintiff [sought] additional damages for pain and suffering, . . . [d]efendant ha[d] established by a preponderance of the evidence that the jurisdictional amount had been satisfied." *Id.*; *see also Henderson v. Dollar Gen. Corp.*, No. 07-0799-CG-M, 2009 WL 959560, at *4 (S.D. Ala. Apr. 7, 2009) (finding the amount in controversy satisfied where plaintiff's quantified damages meant that the "defendant need[ed] only make up a difference of less than $10,000 in controversy to keep this

case in federal court" and "'a fair and impartial mind' would clearly find that years of pain in addition to the other elements of damage that the plaintiffs claim[ed] add[ed] up to a dispute of at least that amount.") (quoting *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1220-21 (11th Cir. 2007)).

Here, by contrast, Plaintiff seeks only $32,607.27 for past medical expenses, a figure that is less than half the jurisdictional amount, leaving a balance of $42,392.73 and forcing the Court to take quite a leap in inferring that the amount in controversy can be met. Neither the Removal Notice nor the Remand Response points to any other damages sought by Plaintiff in his Amended Complaint besides his past and future medical expenses. And even if JetBlue had pointed to, for example, Plaintiff's seeking of damages for lost earnings as additional evidence supporting the amount in controversy, it would still need to identify something in the record substantiating those damages. *Cf. Moses*, 2013 WL 11977917, at *3 (explaining that the pre-suit demand package "upon which [d]efendant relied did not merely demand $255,000.00 to settle the case with no support for the amount claimed" because it provided detailed medical expenses *along with* income tax statements supporting plaintiff's damages claim for loss of earning capacity.).

While "[t]he Court may [] use its judicial experience and make reasonable inferences and deductions to determine the amount in controversy," *Stern*, 424 F. Supp. 3d at 1269, this can only be done when the "removing defendant makes specific factual allegations establishing jurisdiction and can support them (if challenged by the plaintiff or the Court) with evidence . . ." *Pretka.*, 608 F.3d at 754. Because JetBlue can only provide record support for less than half of the jurisdictional amount, the Court rejects its invitation to infer that future medical expenses sought by Plaintiff make up the difference. *See Jeffers v. State Farm Mut. Auto. Ins. Co.*, No. 3:09-cv-1097-J-34JBT, 2010 WL 11623391, at *5 (M.D. Fla. July 19, 2010) ("The total of medical bills ($58,508.80) and other damages actually delineated [in a pre-suit demand letter] [did] not reach the $100,000

demanded or exceed the $75,000 . . .Whatever value such a letter might have in another case, the Court's 'reasonable deductions, reasonable inferences, and other reasonable extrapolations,' from the Demand Letter in this case . . . leave the Court of the view that the [] demand is indicative more of puffing and posturing for settlement than of an honest assessment of the value of the claims in this action.") (quoting *Pretka*, 608 F.3d. at 754).

Finally, JetBlue's argument that "[P]laintiff has not contested the amount requested in the pre-suit demand, the veracity of the medical information therein, or the potential future medical costs in connection with treatment of the [Plaintiff]" does not alter the analysis. Remand Resp. at 4. Plaintiff has contested that the amount requested in the settlement demand was a reasonable assessment of his claim. Mot. to Remand at 6. But even if Plaintiff had not contested this point, this would still not be determinative of the amount in controversy. It is JetBlue's burden to demonstrate the jurisdictional amount by a preponderance of the evidence, and it cannot do so simply by asserting that Plaintiff does not deny that his claims exceed that amount. *See Williams*, 269 F.3d at 1319 (rejecting assertion that plaintiff's refusal to stipulate that her claims did not exceed $75,000.00, without more, satisfied defendant's burden on the jurisdictional issue).

JetBlue's assertion that Plaintiff does not contest the contents of the demand letter fails to alter the analysis for the same reason: JetBlue has not met its burden of showing that the contents of the letter establish the requisite jurisdictional amount. A plaintiff's failure to contest the veracity of the information in a pre-suit demand is relevant only when that information establishes the amount in controversy. *See, e.g.*, *Katz*, 2009 WL 1532129, at *6 (considering plaintiff's "failure to contest[] the veracity of the information in the[] pre-suit demand package or the amounts alleged in the Notice of Removal" only after "conclud[ing] that [d]efendant ha[d] established by a preponderance of the evidence that the jurisdictional amount ha[d] been satisfied.").

Ultimately, the Court finds that the pre-suit demand letter relied upon by JetBlue to establish the amount in controversy is more indicative of puffing and posturing than a reasonable assessment of Plaintiff's claims because it lacks specific information substantiating Plaintiff's damages.  *See Moses*, 2013 WL 11977917, at *3.  At best, "the [d]emand [l]etter may indicate that the amount in controversy *potentially* exceeds $75,000, but it does not demonstrate 'by a preponderance of the evidence that the amount in controversy can more likely than not be satisfied.'"  *Jeffers*, 2010 WL 1162391, at *5 (quoting *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1281 n.5 (11th Cir. 2001)) (emphasis in original); *accord* Remand Resp. at 4 (referring to "the *potential* future medical costs" related to Plaintiff's alleged injuries) (emphasis added).  Therefore, because considerable doubt remains as to whether the amount in controversy is jurisdictionally sufficient, that doubt is "resolved in favor of remand to state court."  *Univ. of S. Ala.*, 168 F.3d at 411.

## CONCLUSION

Based on the foregoing, the Court finds that JetBlue has failed to "prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdiction requirement."  *Pretka*, 608 F.3d at 752.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's First Motion to Remand [ECF No. 4] is **GRANTED**.  This case is **REMANDED** to the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County.  The Clerk of Court is directed to **CLOSE** this case.  All pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 29th day of October, 2020.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**